

DA 13-0171

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 341N

IN THE MATTER OF:
M.A.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DN 01-402
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Johnna K. Baffa; Van de Wetering & Baffa, P.C.; Missoula, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

       Matthew Johnson, Jefferson County Attorney; Boulder, Montana

Submitted on Briefs:  October 23, 2013
Decided:  November 12, 2013

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On January 24, 2013, the Fifth Judicial District Court, Jefferson County, entered its Findings of Fact, Conclusions of Law, and Order Terminating Birth Mother's and Birth Father's Rights to M.A., age 11. M.Z. (Mother) appeals. L.A. (Father) does not appeal, but the record indicates that Mother and Father have resumed their relationship and reside together.

¶3 This case involves a very unfortunate set of circumstances spanning back to the early 1990s. Mother and Father (collectively Parents) have previously had their parental rights terminated to nine children: three children in Nevada in 1992, and six in Oregon between 1994 and 1999. This case, involving the tenth child, is the first in Montana.

¶4 Parents moved to Boulder, Montana in 2001, while Mother was pregnant with M.A. Montana Department of Health and Human Services (DPHHS) received notification from Oregon outlining the history of concerns for children residing with Parents. This notification suggested immediate removal of any child in their home due to "imminent danger." Documentation from the Oregon and Nevada agencies was submitted to DPHHS, resulting in "hundreds of pages" of history.

2

¶5     A Petition for Temporary Legal Custody was filed by the State on November 15, 2001, and M.A. was removed from Parents' custody upon his birth. This petition resulted in a treatment plan for Parents, and the petition was ultimately dismissed on November 20, 2002, upon the State's motion. At that time the case worker noted that Parents were making good progress on their treatment plan, and recommended continuation of parental monitoring and skill building, as well as continuation of therapy and other services.

¶6     Over the nearly 10 years that M.A. lived with Parents, reports were received by DPHHS that Parents were not following through with community resources or mental health services made available under their treatment plan, as well as reports of drug abuse, and physical and sexual abuse towards M.A. M.A. had repeated involvement with law enforcement and the court system beginning at age eight. On one occasion M.A. was picked up by law enforcement walking down the interstate intoxicated, and on another he was transported by ambulance from his home where he was found unconscious from drinking whiskey. In 2010, while seeking a dissolution from Father, Mother informed DPHHS that M.A. had disclosed sexual abuse by Father.

¶7     On October 17, 2011, the State filed for Emergency Protective Services and Temporary Legal Custody of M.A., who was then admitted to Shodair hospital. On May 10, 2012, the State filed a Petition for Permanent Legal Custody and Termination of Parental Rights. The State asserted that no treatment plan or attempt at reunification was necessary pursuant to § 41-3-423(2)(e), MCA, which provides that such efforts are not

3

required when the circumstances related to prior involuntary terminations of parental rights are relevant to the current petition. The District Court held hearings on the termination petition on November 7, November 14, and December 12, 2012.

¶8 Evidence demonstrated that the reasons Parents' rights to the prior nine children were terminated were "severe and chronic physical neglect," a history of domestic abuse by Father against Mother and the children, the "substantial threat" of sexual abuse posed by Father to any child in the home, and drug abuse by Parents. Witnesses testified that they believed the same circumstances were present in the current case.

¶9 The psychologist who evaluated Father for the present case testified that Father's prior evaluations and history showed Father had consistent problems with impulse control, mood disregulation, and "a significant lack of ability to follow through with recommendations." Ultimately, the psychologist did not make any treatment recommendations for Father "based on consistent failure over the last two decades." He testified that it was his belief that Father "is treatment resistant, and he likely will not make gains from future treatment towards reunification with yet another child." He stated that his concerns regarding Father's parenting ability were "equally applicable" to a newborn or to an eleven-year-old.

¶10 Although Mother had admitted to repeated physical abuse over the years by Father, she denied it at the hearing. She has also previously admitted that Father physically abused their children, including M.A. She had filed for orders of protection against him on several occasions, but always resumed her relationship with him. In

4

Nevada in 1990, Mother had left Father and filed for an order of protection. At this time she reported that Father was physically abusive toward her and her children, and described one instance where Father punched one of the children in the face resulting in two broken teeth. However, Mother resumed her relationship with Father a few months later and did not follow up on these allegations of abuse. In 2010, Mother filed for an order of protection against Father in Jefferson County. The petition noted that Father has been "abusing [M.A.] by picking him up tossing him and hitting and pushing him around." However, Mother has again resumed her relationship with Father. At the hearing in this case, Mother testified that she could not remember stating previously that Father was violent toward her or M.A.

¶11    The evidence presented by Parents consisted of their own testimony. Parents both denied drug abuse and claimed only occasional drinking. Parents denied that Father was abusive towards Mother, and claimed there had only been one instance of violence towards M.A., which resulted in an ultimately dismissed charge for Partner or Family Member Assault. Mother further denied ever saying that M.A. had disclosed sexual abuse by Father. Over the years, Parents have given conflicting stories regarding termination of their parenting rights to the prior children. At the hearing, they claimed that the children were taken away due to vindictive reports to family services agencies, misunderstandings about accidents or illnesses of the children and, generally, the fault of others.

5

¶12 On appeal, Mother claims that the District Court erred in terminating her parental rights to M.A. based on the prior terminations because the District Court failed to make specific findings concerning the circumstances surrounding the previous terminations; the Order did not reference any specific circumstances from the prior terminations; and no witnesses testified concerning the Nevada and Oregon terminations. Mother further argues that any evidence concerning the prior terminations was stale and outdated, and was insufficient to establish by clear and convincing evidence that the prior circumstances were relevant to the current termination proceeding. Finally, Mother argues that because the prior children were removed from her custody as infants or very young children, the circumstances surrounding those terminations were not relevant to the parenting of a ten-year-old child.

¶13 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re T.S.B.*, 2008 MT 23, ¶ 17, 341 Mont. 204, 177 P.3d 429. To satisfy the statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings. We review a lower court's findings of fact for whether they are clearly erroneous. *In re T.S.B.*, ¶ 18. In a parental rights termination proceeding, the physical, mental and emotional conditions and needs of the child are of paramount concern and take precedence over the parental rights. *In re T.S.B.*, ¶ 19.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. No specific factual findings regarding the prior terminations were necessary so long as the

6

findings demonstrate that the circumstances culminating in the prior terminations are relevant to the one at issue. The District Court's oral and written findings of fact are supported by substantial evidence and demonstrate a sufficient connection between the circumstances of the prior terminations and the one at issue, despite the significant span of time between the terminations. The District Court did not abuse its discretion in ordering termination of Mother's parental rights.

¶15 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER