DA 13-0257

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 370N

IN THE MATTER OF:

I.S.,

A Youth in Need of Care.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDN 11-26
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Bryce R. Floch; Floch Law Firm, P.C.; Kalispell, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General; Kathryn F. Schulz, Assistant
Attorney General; Helena, Montana

Leo Gallagher, Lewis and Clark County Attorney; Tara Harris, Deputy
County Attorney; Helena, Montana

Submitted on Briefs:  November 20, 2013
Decided:  December 10, 2013

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    On March 15, 2013, the First Judicial District Court, Lewis and Clark County, entered its Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights to I.S., then 22 months old.  I.S. is a Native American child, and consequently ICWA applies.  The parental rights of both I.S.'s Father and Mother (Parents) were terminated.  Only Father appeals.

¶3    Mother had two other children (not children of Father) removed from her care by Department of Public Health and Human Services (DPHHS) in 2009 following Parents' arrests for drug possession.  Father was also charged with child endangerment for driving while under the influence of drugs with one of Mother's children in the car.  DPHHS began a treatment plan for Mother at this time which included chemical dependency treatment and parenting classes.  In the months before I.S.'s birth, a family group decision-making meeting was held to discuss the progress on this plan, and identify concerns about the pending birth of I.S., including possible placement options.  Upon his birth in April, 2011, I.S. tested positive for opiates.  I.S. was hospitalized for several days due to resulting respiratory and neurological problems.  DPHHS placed I.S. in foster care

2

upon his discharge, and filed a petition for emergency protective services, adjudication, and temporary legal custody as to I.S. on May 6, 2011. A family group decision-making meeting was held with Parents and their attorneys on June 2, 2011. At this meeting, a treatment plan was developed for Father. Father reported that he had tested positive for opiates and had just been released from jail, but had started attending AA and NA and was reporting to his probation officer for weekly UA testing. Father was instructed at this meeting to contact the visitation provider to set up visits with I.S. However, Father failed to attend two different intake appointments.

¶4 By stipulation of Parents, I.S. was adjudicated a youth in need of care on June 23, 2011, due to Mother's ongoing case for her other children, and Parents' past and current abuse of drugs. Neither had seen I.S. since his removal despite the opportunity to do so. Another family group decision-making meeting was held in July, 2011. Father reported he was visiting I.S. twice a week; however, he soon stopped visiting and was terminated from the visitation program due to noncompliance. Father also reported he was doing outpatient chemical dependency treatment in Polson.

¶5 The treatment plan Father assisted in developing at these two meetings was submitted to the District Court and approved on August 17, 2011. At the August 17th hearing, Father was not present and his attorney reported she believed he had begun using drugs again and had been incarcerated. Social worker Jonelle LaPiere reported that her last contact with Father had been the July family group decision-making meeting. Father was arrested for probation violations in October 2011, including changing residence

3

without approval; failing to report to his probation officer from March to May, 2011, and from July 7, 2011, until his arrest on October 21, 2011; and using morphine and oxycontin. LaPiere advised Father's case manager at Montana State Prison what tasks were on Father's treatment plan, and learned that several resources for Father were available at the prison.

¶6 On December 15, 2011, DPHHS submitted a report of Father's progress on the treatment plan. LaPiere reported Father had made no progress on the plan. On December 21, 2011, the court granted an extension of temporary legal custody. Father was not present, but his counsel stipulated to the extension. Temporary legal custody was extended again on June 14, 2012, by stipulation of Father, through his attorney, and without objection.

¶7 Father entered the Nexus Program for inpatient chemical dependency treatment in April, 2012, as part of his criminal sentence. While at Nexus, Father began communicating with DPHHS, including sending four to five letters and limited phone contact. Father also completed parenting classes while in treatment.

¶8 DPHHS filed a petition to terminate Parents' rights on August 15, 2012, and a hearing was set for October 30-31, 2012. Father moved to continue the hearing based in part on his anticipated release to a prerelease center in January, 2013. The hearing eventually took place on February 21, 2013.

¶9 At the hearing, the representative of the Tribe explained that although she had considered requesting additional time for Father to work on his treatment plan, she

determined that termination was appropriate due to the fact that Father had not attempted to complete any portion of the plan prior to his incarceration and that his earliest release date from prerelease was July, 2013. The ICWA expert testified in support of termination, noting I.S. needed permanency and neither Parent had made much effort toward reunification. She noted that I.S. had been with the same foster family since he was 17 days old, and the case had been going on for nearly two years. She also expressed concerns about Father's chemical dependency history and how long it would take for him to establish stability once he was finally released in July. Both testified they felt it was in I.S.'s best interests to terminate parental rights.

¶10     Father's probation officer explained Father was currently in prerelease in Helena, which was his fourth prerelease placement since 1998. She further testified that Father had been through inpatient chemical dependency treatment three times prior to the Nexus program, all connected to criminal sentences. Father had a history of drug use that began at age 16, and despite repeatedly completing treatment he had only maintained sobriety for one year. She explained that, once Father was released from the prerelease center, at the earliest in July, there would be a 30 to 60-day transitional living period, and he would need to demonstrate sobriety outside of a controlled environment before he could be considered to have completed chemical dependency treatment.

¶11     Father admitted that he put his addictions before the needs of his child, and admitted to pursuing drugs instead of visiting I.S. or attending treatment, parenting

classes, or court hearings. However, Father expressed his desire to parent I.S. and pled with the court for one more chance to do so.

¶12 On appeal, Father claims that the District Court erred in terminating his parental rights to I.S. because the State did not invoke § 41-3-609(4)(c), MCA (treatment plan not required if parent incarcerated for more than one year), as a basis for termination; termination was not constitutionally or statutorily authorized because the State failed to prove Father was unfit to parent and was unlikely to change within a reasonable amount of time; and the State failed to prove, beyond a reasonable doubt, that "active efforts" were made toward preventing the breakup of the family as required by ICWA. Father contends that "active efforts" require more than "just draft[ing] a treatment plan, knowing the parent will soon be incarcerated, and leav[ing] the known[-]to[-]be incarcerated parent, such as [Father], to their own devices to complete the plan." Father also argues that the treatment plan approved by the court was inappropriate due to his incarceration.

¶13 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re T.S.B.*, 2008 MT 23, ¶ 17, 341 Mont. 204, 177 P.3d 429. To satisfy the statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings. We review a lower court's findings of fact for whether they are clearly erroneous. *In re T.S.B.*, ¶ 18. In a parental rights termination proceeding, the physical, mental, and emotional conditions and needs of the child are of paramount concern and take precedence over the parental rights. *In re T.S.B.*, ¶ 19.

6

¶14 The court found that despite being provided ample opportunities prior to his incarceration, Father failed to maintain communication with DPHHS or make any effort toward completing his treatment plan. It further found that Father's only progress was made while incarcerated, and as he was still in prerelease, he had no way of demonstrating that he could remain sober or adequately parent I.S. Thus, it determined that Father had "not been successful in remedying [his] situation within a time frame that is reasonable for meeting [I.S.]'s needs for stability and permanency. As a result, [Father's] conduct is unlikely to change within a reasonable amount of time." The court's conclusions of law also noted that based on § 41-3-604(1), MCA, it was presumed that I.S.'s best interests would be served by termination of parental rights because he had been in foster care for more than 15 of the last 22 months.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. There was no requirement that the State proceed under § 41-3-609(4)(c), MCA, even though it could have chosen to do so. Additionally, the District Court's oral and written findings of fact are supported by substantial evidence. The testimony of the social workers, Tribe representative, ICWA expert, CASA, and probation officer all provided substantial evidence that Father had failed to complete the treatment plan, and that he would be unable to do so within a reasonable time. The testimony also supports the court's conclusion that active efforts had been proven beyond a reasonable doubt. Finally, Father's argument as to whether the treatment plan was appropriate due to his

incarceration has been waived. Father did not object to the plan during its development, upon submission to the court, or at either of the hearings for extension of temporary legal custody. *See In re H.R.*, 2012 MT 290, ¶ 11, 367 Mont. 338, 291 P.3d 583. The District Court did not abuse its discretion in ordering termination of Father's parental rights.

¶16    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT