DA 14-0322

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 26N

IN THE MATTER OF:

D.B., E.B., T.B., and C.B.,

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District, In and For the County of Cascade, Cause Nos. CDN-11-244, CDN-11-245, CDN-11-256, CDN-11-247, and CNN-12-054 Honorable Kenneth R. Neill, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Jennifer A. Giuttari, Attorney at Law, Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

            Theresa Diekhans, Assistant Attorney General, Great Falls, Montana

                  Submitted on Briefs: December 24, 2014
                           Decided: January 27, 2015

Filed:

                                               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     J.E. appeals from an order of the Eighth Judicial District, Cascade County, terminating his parental rights to D.B., E.B., T.B., and C.B. (hereinafter "children"). We affirm.

¶3     The issues on appeal are whether J.E.'s treatment plan was appropriate in light of his Post Traumatic Stress Disorder (PTSD) diagnosis and whether the District Court's findings of fact in the order of termination are clearly erroneous.

¶4     J.E. ("Father") is the natural father of the children. In December 2011, the Department of Health and Human Services ("Department") filed a petition for emergency protective services, adjudication as youths in need of care, and temporary legal custody of D.B, E.B., and T.B.[1] The Department intervened due to reports of physical abuse against Father's stepson, T.C., and physical neglect of all the children. In February 2012, Father and M.E. ("Mother") stipulated to the adjudication of the children as youths in need of care.

---

[1] C.B. was born after the initial filing for temporary legal custody. On June 19, 2012, C.B. was adjudicated a youth in need of care and Father's treatment plan was approved to include C.B.

2

¶5	In March 2012, the Department filed the treatment plan, after discussing the objectives with Father and his counsel.  Father did not object to any task or goal.  The treatment plan required Father to obtain an anger management assessment and follow the recommendations, participate in individual and family counseling, establish a safe home, attend parenting classes, and maintain employment.  In September 2012, the Department sought extension of temporary legal custody as the parents were making progress and warranted additional time.

¶6	In February 2013, Father was arrested for felony theft.[2]  Despite Department referrals, Father had not yet obtained an anger assessment and attended only five individual counseling sessions between May 2012 and February 2013.  On March 29, 2013, the Department filed a petition for termination of Father's parental rights, noting that he had failed to complete many treatment plan tasks.

¶7	In April 2013, the Department offered to reconsider termination if the parents reengaged in their treatment plan.  As a result, the hearing was continued five times.  During this period, Father started weekly counseling with Ralph Beeson at the Veteran's Center.  In August 2013, Mr. Beeson diagnosed Father with PTSD.  Also during this time, Father completed an eleven-week anger management program with Roy Harrington, his VTC counselor.

¶8	In January 2014, the Department moved to withdraw its termination petition.  The District Court denied the motion and reset the termination hearing for April 16, 2014.  In

---

[2] Father received a three-year deferred imposition and was placed in Veterans' Treatment Court (VTC).

3

February of that year, the children were returned to the home for a trial visit. Father quickly disengaged from his treatment plan by failing to participate in counseling, violating the rules of VTC, quitting his job, using drugs and alcohol, and violating a no-contact order.

¶9 On April 16, 2014, the District Court held a termination hearing. Numerous witnesses testified, including Father's counselors. The District Court issued findings of fact, conclusions of law, and an order terminating Father's parental rights. The District Court found that Father had failed to complete an appropriate treatment plan and his conduct was unlikely to change.

¶10 We review a district court's decision to terminate parental rights for abuse of discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691 (citations omitted). A district court abused its discretion only if it "acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re D.B.,* ¶ 16 (citations omitted). A parent's fundamental liberty interest in the care and custody of his child necessitates fundamentally fair procedures. *In re D.B.,* ¶ 17 (citations omitted). A district court must make specific factual findings before terminating parental rights. *In re D.B.*, ¶ 18 (citations omitted). Findings of fact are reviewed for clear error and conclusions of law for correctness. *In re D.B.,* ¶ 18 (citations omitted). "The district court is bound to give primary consideration to the physical, mental and emotional conditions and needs of the children. Consequently, the best interests of the children are of paramount concern in a parental rights termination

proceeding and take precedence over the parental rights." *In re T.S.B.*, 2008 MT 23, ¶ 19, 341 Mont. 204, 177 P.3d 429 (citations omitted).

¶11 A court may order termination of parental rights upon a finding of clear and convincing evidence that the child is an adjudicated youth in need of care, an appropriate treatment plan has not been complied with or not been successful, and the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA; *In re A.D.B.*, 2013 MT 167, ¶ 41, 370 Mont. 422, 305 P.3d 739. Due to the unique nature of every situation, this Court has not established a definite test for appropriateness, but generally, the Court considers whether the parents were represented, whether they stipulated to the treatment plan, and whether the plan considers the problems facing the parent and the child. *In re A.D.B.,* ¶ 42 (citations omitted). The Department bears the burden of proving, by clear and convincing evidence, that a treatment plan is appropriate. *In re A.D.B.,* ¶ 42 (citations omitted).

¶12 A parent must object to a treatment plan goal or risk waiving the right to argue the goal's appropriateness on appeal. *In re H.R.*, 2012 MT 290, ¶ 10, 367 Mont. 338, 291 P.3d 583 (citations omitted). Father did not object to the treatment plan tasks. Father and his counsel met with CPS worker, Kayla Moodie, to discuss the plan's objectives and was present when the District Court stated it would approve the plans unless the parties objected. Father did not challenge his treatment plan and has waived his right to argue that his treatment plan was inappropriate.

¶13 We nevertheless note that clear and convincing evidence supports the finding that the treatment plan was appropriate. Father argues the treatment plan was inappropriate

5

because the plan failed to consider his PTSD diagnosis. We disagree. A diagnosis, post-treatment plan, does not automatically render the plan inappropriate; rather, clear and convincing evidence must show that the plan anticipated the disabled parent's specific needs or was modified to address the needs. *In re D.B.*, ¶ 35. The treatment plan was appropriately designed to address the needs of the children, two of whom suffered from reactive attachment disorder, as well as Father. In particular, the plan sought to address Father's anger issues, which were the primary cause of the Department's involvement with the family. Finally, the plan was not inappropriate, in light of Father's diagnosis, as the Department provided multiple counseling referrals and additional time to complete tasks.

¶14 Father also challenges the District Court order, arguing that it failed to make a specific finding as to whether Father's treatment plan was appropriate in light of his PTSD diagnosis. Montana law requires the district court to make a specific factual finding that the parent did not comply with an appropriate treatment plan and that the parent's conduct or condition is unlikely to change within a reasonable time. *In re D.B.,* ¶ 21; § 41-3-609(1)(f), MCA.

¶15 Here, the District Court specifically found that "appropriate treatment plans were Court ordered for J.E. and M.E. and they have not completed those treatment plans." The District Court made findings detailing Father's diagnosis and the various counseling services, including the Veteran's Center. The Court noted that Father had failed to consistently participate in mental health services and that both counselors agreed that Father had considerable work to do before his anger issues were resolved. The District

6

Court adequately addressed each statutory requirement by making a specific factual finding that Father had not complied with an appropriate treatment plan and his conduct was unlikely to change within a reasonable time.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The District Court did not abuse its discretion in terminating Father's parental rights. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶17 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON