No. 04-427

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 237

IN THE MATTER OF T.H. and C.D.F.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DN 00–10
                Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Judith A. Loring, Attorney at Law, Stevensville, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Jennifer Anders,
            Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney; Leslie Halligan,
            Deputy County Attorney, Missoula, Montana

                                Submitted on Briefs: April 19, 2005

                                    Decided:    September 20, 2005

Filed:

        _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      D.H. (Mother), the biological mother of T.H. and C.D.F., appeals from the orders entered by the Fourth Judicial District Court, Missoula County, terminating her parental rights and from subsequent orders. The Department of Public Health and Human Services (Department) moves to dismiss this appeal as untimely or barred by laches. We deny the motion to dismiss and affirm.

¶2      We address the following restated issues on appeal:

¶3      1. Is Mother's appeal untimely or barred by laches?

¶4      2. Given the undisputed findings of fact, did the District Court abuse its discretion in terminating Mother's parental rights based on abandonment?

¶5      3. Did the proceedings comport with relevant statutory and constitutional due process requirements?

**BACKGROUND**

¶6      Mother and L.H. are the biological parents of T.H., and Mother and C.F. are the biological parents of C.D.F. On August 2, 2001, the District Court entered an order terminating the parent-child legal relationship between Mother and T.H., withdrawing its previous orders regarding L.H. and holding the Child and Family Services Division of the Department financially responsible for the costs of placing T.H. in Washington state with her maternal aunt. The August 2 order included findings and conclusions that the Department failed to provide Mother with an appropriate treatment plan or necessary services, a finding that Mother had abandoned T.H. and a conclusion--Conclusion #3--that

2

her parental rights to T.H. should be terminated pursuant to § 41-3-609(1)(b), MCA (1999), based on abandonment.

¶7    On August 7, 2001, the District Court amended its order regarding T.H., including an amended Conclusion #17 that reads, "[Mother's] parental rights should not be terminated, pursuant to § 41-3-604(1)(b), MCA, in as much as [the Department] has not provided the services considered necessary for the date return of [T.H.]." The amendment did not alter any of the court's findings or Conclusion #3 about the propriety of termination due to abandonment. Also on August 7, the court entered a separate order terminating Mother's and C.F.'s parental rights to C.D.F. That order included a finding that Mother abandoned C.D.F. and a conclusion that her parental rights should be terminated based on abandonment.

¶8    The Department appealed with regard to issues not involving Mother. We reversed and remanded for entry of judgment in an unpublished opinion, *In re T.H. and C.D.F.*, 2002 MT 293N. On remand, the District Court entered an amended order in April of 2003 which, in pertinent part, retained from the 2001 order both the finding of abandonment of T.H. by Mother and Conclusion #3, that termination of Mother's parental rights to T.H. based on abandonment was appropriate. The order on remand also replaced the above-referenced Conclusion #17 regarding § 41-3-604(1)(b), MCA, with a conclusion that reads "[a]s noted abvoe [sic], but for her abandonment of [T.H.], [Mother's] parental rights could not be terminated." C.D.F.'s foster parents have since adopted her, and T.H.'s maternal aunt has guardianship of her and plans to adopt her. The record reflects that no one served Mother

with notice of entry of judgment regarding the termination of her parental rights to either child at any time.

¶9 On November 18, 2003, Mother filed a verified petition to terminate planned permanent living arrangements, in which she requested the District Court to vacate or void its previous orders placing the children away from her, granting the Department temporary legal custody (TLC) and terminating her parental rights. The District Court denied the petition. Mother then moved the court to vacate its order denying her petition, set aside the termination order regarding T.H. and hold a new hearing regarding C.D.F. or, alternatively, certify its order as a final determination from which she could appeal. The District Court also denied that motion.

¶10 In May of 2004, Mother filed a notice of appeal from the District Court's orders terminating her parental rights and denying her subsequent petition and motion. The Department moved to dismiss the appeal as untimely or barred by laches, and Mother responded. We took the motion under advisement.

## DISCUSSION

¶11 *Is Mother's appeal untimely or barred by laches?*

¶12 The Department moves to dismiss Mother's appeal on grounds that it is untimely pursuant to § 42-2-620, MCA, or, alternatively, barred by the doctrine of laches. Section 42-2-620, MCA, provides that

> [s]ubject to the disposition of a timely appeal, upon expiration of 6 months after an order terminating parental rights has been issued, the order may not be questioned by any person, in any manner, or upon any ground, including

4

fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or the subject matter.

¶13    In the usual situation where the Department serves a parent whose parental rights have been terminated with notice of entry of judgment, a parent's appeal long after the termination order is issued is untimely.  Rule 5(a)(1), M.R.App.P., requires a party to a civil case to file a notice of appeal within 60 days of service of notice of entry of judgment when such service is required by Rule 77(d), M.R.Civ.P., and the State of Montana is a party.  Thus, Rule 5(a)(1), M.R.App.P., ordinarily would preclude an appeal such as Mother's.  The Department properly concedes, however, that Rule 77(d), M.R.Civ.P., mandates our conclusion that the prevailing party in a child abuse and neglect case must serve notice of entry of judgment on other parties.  It further concedes it did not serve notice of entry of judgment on Mother at any time.

¶14    The Department maintains, however, that the relationship between § 42-2-620, MCA, and the rules of civil and appellate procedure applicable to child abuse and neglect proceedings is analogous to the postconviction relief context.  It urges that our analysis in a case involving a petition for  postconviction relief, *State v. Garner*, 1999 MT 295, 297 Mont. 89, 990 P.2d 175, also "should hold true for abuse and neglect cases."

¶15    In *Garner*, ¶¶ 22-25, we determined the 60-day period for appeal from the entry of an order on a petition for postconviction relief, as set forth in § 46-21-203, MCA, is a specific statutory requirement which controls over the general provision in Rule 77(d), M.R.Civ.P., requiring service of notice of entry of the judgment or order.  We also noted that, pursuant to § 46-21-201(1)(c), MCA, civil procedure rules apply in postconviction

proceedings only if not inconsistent with postconviction statutes. *Garner*, ¶ 26. On those bases, we concluded Rule 77(d), M.R.Civ.P., does not apply in postconviction proceedings. *Garner*, ¶ 27.

¶16 Here, unlike in *Garner*, it is undisputed that Rule 77(d), M.R.Civ.P., applies. Moreover, unlike the statute at issue in *Garner*, § 42-2-620, MCA, does not alter the filing period for timely appeals; it merely sets a 6-month time limit for all other challenges to orders terminating parental rights--a time limit, which, by its terms, is "subject to the disposition of a timely appeal." Pursuant to Rule 5(a)(1), M.R.App.P., Mother's 60-day time limit for appeal does "not begin to run until service of notice of entry of judgment." As a result, the § 42-2-620, MCA, 6-month limit on other challenges does not apply to Mother's timely appeal from the District Court's orders terminating her parental rights and the underlying proceedings.

¶17 As a final matter regarding § 42-2-620, MCA, we address our recent opinion in *In re P.D.L.*, 2004 MT 346, 324 Mont. 327, 102 P.3d 1225. There, we recognized § 42-2-620, MCA, "attempts to provide finality to the termination of parental rights proceedings so that a child may be safely adopted without the threat of the adoption being set aside at some future date." We concluded § 42-2-620, MCA, rendered an order terminating a father's parental rights "immune to any collateral attacks" made more than six months after the order was issued, including the father's Rule 60(b), M.R.Civ.P., motion for relief from judgment. *P.D.L.*, ¶ 14. Here, Mother's appeal from the termination orders is not a collateral attack.

6

It is the direct appeal to which she is entitled pursuant to Rule 5, M.R.App.P., as well as the "timely appeal" recognized in § 42-2-620, MCA.

¶18 We conclude § 42-2-620, MCA, does not bar Mother's appeal from the District Court's orders terminating her parental rights. For that reason, we need not address Mother's appeal from the court's later orders on her petition and motion.

¶19 The Department also contends, however, that the equitable doctrine of laches bars Mother's appeal. It relies on *In re Marriage of Deist*, 2003 MT 263, ¶ 17, 317 Mont. 427, ¶ 17, 77 P.3d 525, ¶ 17, and *Cole v. State ex rel. Brown*, 2002 MT 32, ¶ 24, 308 Mont. 265, ¶ 24, 42 P.3d 760, ¶ 24, for the proposition that laches applies when a party is actually or presumptively aware of his or her rights and fails to act until such a delay has occurred as to render enforcement of the asserted right inequitable. The Department asserts letters from the District Court to Mother indicate she was aware in 2002 that her parental rights had been terminated, and she took no action until November of 2003. The letters from the District Court first appeared in the record as attachments to Mother's motion to vacate the denial of her post-termination petition. Having concluded we need only address Mother's appeal from the court's orders terminating her parental rights to T.H. and C.D.F., we further conclude the District Court's letters are outside the scope of the record relevant to Mother's direct appeal from the termination orders and, therefore, we decline to consider them.

¶20 Were we to consider post-termination matters, however, we observe the Department advances no authority for applying the equitable doctrine of laches in a child abuse and neglect case involving a timely appeal. Moreover, we note laches is an equitable doctrine,

7

and "'parties must not expect relief in equity, unless they come into court with clean hands.'" *Cowan v. Cowan*, 2004 MT 97, ¶ 16, 321 Mont. 13, ¶ 16, 89 P.3d 6, ¶ 16 (quoting *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 19, 307 Mont. 45, ¶ 19, 36 P.3d 408, ¶ 19) (internal quotation marks omitted).  The Department's hands are hardly pristine in the present case, since it failed on several occasions to discharge its simple affirmative duty under Rule 77(d), M.R.Civ.P., to serve notice of entry of judgment on Mother.

¶21   The Department further argues the best interests of the child are paramount and "[Mother's] legal right to appeal does not discharge her affirmative duty to act in the best interests of her child."  This argument is wholly without merit.

¶22   Unlike the Department, which had an affirmative duty to serve Mother with notice of entry of judgment, Mother had no "affirmative duty" under the law to file a notice of appeal before receiving service of notice of entry of judgment.  Further, a parent's right to the care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures.  *See, e.g.*, *In re V.F.A.*, 2005 MT 76, ¶ 6, 326 Mont. 383, ¶ 6, 109 P.3d 749, ¶ 6 (citation omitted).  The best interests of the child are paramount in child abuse and neglect cases, but the Department may not simply void a parent's fundamental liberty interest by forgoing required procedures.

¶23   Finally, the Department asserts this case is similar to *In Interest of E.H.* (Fla. Dist. Ct. App. 1992), 591 So.2d 1097, 1098-99, in which a Florida appellate court denied a mother's request for a belated appeal after her counsel filed a notice of appeal one day late.  The issue here is not whether this Court should grant a "belated" appeal; Mother's appeal is timely due

to the Department's failure to serve her with notice of entry of judgment. Furthermore, the intermediate appellate court in *E.H.* certified the issue to the Florida Supreme Court, which granted the belated appeal based on "the significant policy interest in ensuring that a parent and child are not separated without a thorough review of the merits of the case." *In Interest of E.H.* (Fla. 1992), 609 So.2d 1289, 1291. Thus, the Florida Supreme Court essentially reversed the intermediate court's ruling, and the State's reliance on it is misplaced for that reason as well.

¶24 We conclude Mother's appeal from the termination of her parental rights is timely and is not barred by laches.

¶25 *2. Given the undisputed findings of fact, did the District Court abuse its discretion in terminating Mother's parental rights based on abandonment?*

¶26 In reviewing a district court's termination of parental rights, we determine whether the findings of fact are clearly erroneous, whether the conclusions of law are correct and whether the court abused its discretion in ordering termination. *In re J.B.K.*, 2004 MT 202, ¶ 13, 322 Mont. 286, ¶ 13, 95 P.3d 699, ¶ 13 (citation omitted).

¶27 As a preliminary matter, the Department asserts this appeal should be dismissed because Mother has not provided an adequate record for review, as required by Rule 9, M.R.App.P. In response, Mother states she is contesting the District Court's conclusions, not its findings. Consequently, we will address Mother's issues in that limited context.

¶28 Highlighting Finding #72 of the August 2, 2001 order, Mother asserts she was "frustrated" in her attempts to visit her children and contends her difficulties with visitation cannot "be used to sustain a finding of 'abandonment.'" As just stated, however, Mother

9

does not challenge any findings. In any event, we note Finding #72 does not concern her visitation.

¶29 The District Court found Mother stipulated to the TLC in August of 2000, left Missoula in late November or early December of 2000, had not been located in any out-of-state treatment facility, contacted T.H. only twice between March of 2000 and April of 2001, and did not contact C.D.F. or Department workers after late November of 2000. In each of its termination orders, the court also made an ultimate finding that Mother abandoned the child and a conclusion that her parental rights should be terminated based on abandonment.

¶30 Section 41-3-102(1), MCA (1999), defines abandonment to include "leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future." Section 41-3-609(1)(b), MCA (1999), authorizes a court to terminate parental rights upon finding the parent has abandoned the child. We conclude the District Court's unchallenged findings support its conclusions that Mother's parental rights should be terminated based on abandonment and, therefore, those conclusions are not incorrect.

¶31 Mother asserts, however, that the District Court's conclusions regarding abandonment are inconsistent with its findings and conclusions that her treatment plan was not appropriate, the Department had not made reasonable efforts to address her addiction and the parties did not file an agreement regarding T.H.'s placement. We disagree that such an inconsistency exists.

¶32 A district court may terminate parental rights pursuant to § 41-3-609(1)(b), MCA (1999), upon finding the parent has abandoned the child or, pursuant to § 41-3-609(1)(f), MCA (1999), upon finding the child is an adjudicated youth in need of care, the parent has not successfully completed an appropriate court-approved treatment plan and the parent's conduct or condition rendering him or her unfit is unlikely to change within a reasonable time. Here, the District Court's findings about the treatment plan and the Department's actions relate to the propriety of terminating Mother's parental rights pursuant to § 41-3-609(1)(f), MCA (1999). Mother's parental rights were terminated based on abandonment, pursuant to § 41-3-609(1)(b), MCA (1999), a separate and independent basis for termination.

¶33 Having determined the District Court did not err in concluding Mother's parental rights should be terminated based on abandonment, we hold the District Court did not abuse its discretion in terminating Mother's parental rights on that basis.

¶34 *3. Did the proceedings comport with relevant statutory and constitutional due process requirements?*

¶35 Mother contends the proceedings did not satisfy relevant statutory requirements and violated her constitutional right to due process. We review a district court's interpretation and application of statutes for correctness. *State ex rel. Montana DOT v. Asbeck*, 2003 MT 337, ¶ 10, 318 Mont. 431, ¶ 10, 80 P.3d 1272, ¶ 10 (citation omitted). Our review of questions of constitutional law is plenary. *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, ¶ 9, 87 P.3d 408, ¶ 9 (citation omitted).

11

¶36    Mother first asserts the District Court neither properly adjudicated the children as youths in need of care nor found they were abused or neglected.  We addressed a similar argument in *Matter of M.J.W.*, 1998 MT 142, 289 Mont. 232, 961 P.2d 105, another case involving termination of parental rights based on abandonment.

¶37    In *M.J.W.*, ¶¶ 10-14, we first determined the district court erred in terminating a father's parental rights pursuant to § 41-3-609(1)(c), MCA (1995), the statutory predecessor to § 41-3-609(1)(f), MCA (1999), because that statute required the court to find, among other things, that the child had been adjudicated a youth in need of care, and the record reflected no such adjudication.  Then, however, we concluded the court properly terminated the father's parental rights pursuant to § 41-3-609(1)(b), MCA (1995), based on abandonment, without a prior adjudication of the child as a youth in need of care.  *M.J.W.*, ¶¶ 15-22.  In so doing, we determined the father failed to establish error in the district court's findings or conclusion regarding abandonment.  *M.J.W.*, ¶¶ 15-18.  Then, after tracing relevant statutes, we concluded the district court's determination that the father abandoned the child satisfied § 41-3-602, MCA (1995), which required a determination that the child is "abused or neglected."  *M.J.W.*, ¶¶ 19-22.

¶38    In *M.J.W.*, ¶¶ 15-18, we implicitly recognized that § 41-3-609(1)(b), MCA (1995), did not, by its terms, require a youth in need of care adjudication before termination of parental rights based on abandonment. Section 41-3-609(1)(b), MCA (1999), is identical to § 41-3-609(1)(b), MCA (1995), except that the 1995 version cross-referenced a statutory definition of "abandon" and the 1999 version does not.  With respect to the "abused or

12

neglected" determination issue, the 1995 statutes traced in *M.J.W.*, ¶ 20, are also substantially similar to the 1999 statutes applicable here. Given the similarity between the 1995 and 1999 statutes, we conclude our analysis in *M.J.W.* applies here. Thus, we further conclude the District Court was not required to adjudicate the children as youths in need of care before terminating Mother's parental rights based on abandonment, and its findings of abandonment in the termination orders constituted the required "abused or neglected" determinations.

¶39     Having concluded an adjudication of the children as youths in need of care was not required to support termination based on abandonment, we need not determine whether such an adjudication actually occurred. For the same reason, we also need not address Mother's argument that the District Court "lacked jurisdiction to approve any treatment plan or to proceed whatsoever and under Montana law, the children should have been returned to [Mother] immediately." In any event, however, we note Mother does not challenge the District Court's statement in its TLC order that Mother's counsel "advised that her clients had no objections to the treatment plans . . . or the granting of the [TLC]."

¶40     Mother next argues the District Court violated statutory requirements by awarding TLC to the Department without first holding a hearing and making required findings. Contrary to Mother's assertion, the District Court held a hearing on the petition for TLC on August 11, 2000, with Mother and her counsel in attendance. Further, as stated above, Mother's counsel expressly did not oppose the grant of TLC and, thus, Mother has waived this issue.

13

¶41 Mother also asserts the TLC exceeded the six-month statutory time limit set forth in § 41-3-406(5), MCA (1999). We disagree.

¶42 The District Court granted TLC in an order dated August 23, 2000. Section 41-3-406(5), MCA (1999), provides, in part, that

> [a]n order for [TLC] may be in effect for no longer than 6 months. Before the expiration of the order for [TLC], the county attorney . . . shall petition for one of the following:
>
> . . .
>
> (b) termination of the parent-child legal relationship[.]

The Department petitioned for termination of Mother's parental rights on February 7, 2001, which was within six months of District Court's TLC order. We conclude the order for TLC did not exceed the time limit in § 41-3-406(5), MCA (1999).

¶43 Mother also asserts the guardian ad litem failed to perform certain statutory duties prior to the termination and this failure denied her the ability to present evidence and argument that reunification was in her children's best interests. However, she does not advance any authority, as required by Rule 23(a)(4), M.R.App.P., for her position that a guardian ad litem's performance of his or her duties has any bearing on a parent's ability to present evidence or argument at a hearing. Thus, we need not address this assertion further.

¶44 Next, relying on § 41-3-412, MCA (1999), Mother asserts she did not receive proper notice of the April 23, 2001, hearing on the Department's petition to terminate her parental rights. She asserts she was not personally served, although her attorney, the public defender "and/or" her probation officer allegedly knew her whereabouts. She also contends service

14

by publication was faulty because the District Court allegedly did not receive the affidavit of publication until one week after the hearing and, despite the social worker's belief that Mother was in Pierce County, Washington, the service by publication appeared in *The Seattle Times*, which is based in King County. Finally, she notes the District Court ordered service by publication in the "Montana Independent," a newspaper that she asserts does not exist.

¶45 Section 41-3-412, MCA (1999), on which Mother relies, does not relate to notice of hearings. A district court's decision is presumed correct, and the appellant bears the burden of establishing error. *See, e.g.*, *M.J.W.*, ¶ 18 (citations omitted). Mother has not met her burden of establishing error regarding notice.

¶46 Mother also asserts that the April 23, 2001 hearing on the petition to terminate did not meet the time requirements set forth in § 41-3-412, MCA (1999). She is incorrect.

¶47 Section 41-3-412(1), MCA (1999), authorizes a permanency plan hearing to be combined with another required hearing--in the present case, a hearing on the petition to terminate--and requires that the hearing take place "no later than 12 months after the initial court finding that the child has been subjected to abuse or neglect or 12 months after the child's first 60 days of removal from the home, whichever comes first[.]" Here, the children were removed from Mother in March of 2000. Sixty days later was in May of 2000, and 12 months after that was in May of 2001. Because the hearing occurred in April of 2001, we conclude it was timely under § 41-3-412(1), MCA (1999).

¶48    Mother also argues the District Court violated § 41-3-412(3), MCA (1999), by terminating her parental rights to T.H. in its 2003 order on remand from this Court without first providing her with notice of a permanency plan hearing at which she could submit an informational report about the children's placements and best interests.  Underlying this argument is Mother's assertion that the District Court terminated her parental rights to T.H. on August 2, 2001, "unterminated" those rights in the August 7, 2001 amendment to the August 2 order, and then "re-terminated" them in the 2003 order on remand from the Department's appeal.  We observe that the District Court's 2004 post-termination orders-- which, as noted above, are beyond the scope of the record for purposes of this appeal-- undoubtedly contributed to Mother's confusion in this regard.

¶49    In the August 7 amendment, the court corrected three errors which were essentially clerical in nature: (1) changing the word "inappropriate" to "appropriate"; (2) capitalizing a witness's name; and (3) changing the word "terminate" to "terminated" in Conclusion #17, as set forth above.  These amendments in no way affected the District Court's finding that Mother abandoned T.H., its conclusion that Mother's parental rights to T.H. should be terminated based on abandonment, or that portion of the August 2, 2001 order which terminated Mother's parental rights to T.H.

¶50    In the 2003 order on remand, the District Court properly altered its findings and conclusions relating to the issues raised in the Department's appeal--namely, L.H.'s parental rights to T.H. and the propriety of T.H.'s placement in Washington.  The court retained from the 2001 order the findings regarding Mother's abandonment of T.H., the conclusion that her

16

parental rights should be terminated based on abandonment and the order terminating her parental rights. As noted above, the court replaced Conclusion #17 from the 2001 order with a conclusion that, "but for" the abandonment, her parental rights could not be terminated. This clarification did not constitute a substantive change which would warrant Mother's participation in a hearing. Thus, we conclude the 2003 order on remand did not violate § 41-3-412(3), MCA (1999).

¶51    Mother next argues that certain aspects of the proceedings discussed above violated her constitutional right to due process. She relies on *In re D.V.*, 2003 MT 160, ¶ 14, 316 Mont. 282, ¶ 14, 70 P.3d 1253, ¶ 14 (citation omitted), in asserting parental rights constitute a fundamental liberty interest to be protected by fundamentally fair procedures. Other than this general citation to *D.V.*, however, Mother advances only statutory authority. Since we have concluded Mother has not established error in the asserted statutory violations addressed above, we decline to address this argument.

¶52    Finally, relying on *A.S.*, Mother asserts her due process rights were violated because she allegedly did not have adequate representation once her retained counsel withdrew after the 2001 orders and the District Court appointed a public defender without notifying the defender. In *A.S.*, ¶ 12 (citations omitted), we recognized due process requires that a parent not be placed at an unfair disadvantage during termination proceedings, and fundamental fairness requires that a parent be represented by counsel at proceedings to terminate parental rights. Analogizing to *In re Mental Health of K.G.F.*, 2001 MT 140, 306 Mont. 1, 29 P.3d

485, we concluded the constitutional basis for the right to effective assistance of counsel in termination proceedings is the due process clause. *A.S.*, ¶ 23.

¶53 As discussed above, the District Court terminated Mother's parental rights to both T.H. and C.D.F. in 2001, and the order on remand in 2003 did not substantively alter either of the 2001 orders with respect to Mother. Mother had counsel through the time of the termination orders in August of 2001, and she has counsel on direct appeal from those orders. Thus, her contention that she has been denied her right to adequate counsel, resulting in a due process violation, is without merit.

¶54 We hold Mother has not established that the proceedings did not comport with relevant statutory and constitutional due process requirements.

¶55 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS