
DA 13-0650

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 122

IN THE MATTER OF:

M.J.C.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 11-125
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Carolynn M. Fagen, Fagen Law Office, P.C., Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

        Scott Twito, Yellowstone County Attorney, Richard Helm, Deputy County Attorney, Billings, Montana

                    Submitted on Briefs: April 9, 2014
                          Decided: May 7, 2014

Filed:

_____
                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      D.W. appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, terminating his parental rights to his child M.J.C.  The sole issue on appeal is whether the District Court erred in terminating D.W.'s parental rights.

## BACKGROUND

¶2      The Department of Public Health and Human Services (the Department) has an extensive history with Mother dating back to 1997.  The Department became involved with M.J.C. after blood in M.J.C.'s umbilical cord tested positive for a number of drugs, including methamphetamine and opiates, at the time of her birth.  Mother and M.J.C. were released from the hospital, and Mother missed a follow-up pediatric appointment.  Upon investigation, the Department discovered that Mother had no stable home and was facing incarceration due to a warrant issued by her probation officer.  Mother was subsequently arrested, and M.J.C. was taken into protective custody by the Department on August 30, 2011.

¶3      The District Court adjudicated M.J.C. a youth in need of care on November 30, 2011, and granted temporary legal custody (TLC) of M.J.C. to the Department based on physical neglect by Mother, and absence of a father.  At the time of the removal, Mother named two men as putative fathers of M.J.C.  A court-ordered paternity test determined D.W. to be the father of M.J.C. in February 2012.  At this time, D.W. had moved from Billings back to his home state of Illinois, where he resided during the entire pendency of this case.  Throughout the proceedings, D.W. and Mother twice stipulated to an extension of TLC.

2

¶4     The State provided Mother and D.W. with treatment plans, which were approved by the court. D.W.'s treatment plan required him to complete a number of tasks that included in part: providing releases for fingerprints, a background check, and confidential records; writing a detailed personal history; maintaining biweekly contact with the social worker; cooperating with the home study process required by the Interstate Compact for the Placement of Children (ICPC); and discussing a plan for developing a relationship with M.J.C. The permanency plan at that time was to reunify M.J.C. with Mother.

¶5     Mother was initially very successful with her treatment plan, but ultimately became noncompliant and abandoned M.J.C. D.W. also did not comply with the requirements of the treatment plan. The State then filed a petition to terminate the parental rights of Mother and D.W. on May 24, 2013.

¶6     A hearing on the petition to terminate occurred in August 2013. D.W. appeared by phone from Illinois, and Mother failed to appear. D.W. and social worker Sandy Velin testified. D.W. testified that he did not complete his treatment plan because he believed that M.J.C. would be returned to Mother, due to Mother's early success in treatment. D.W. also testified that he understood that his parental rights could be terminated if he did not complete his treatment plan. He did not know the name of the social worker, or the birth date of M.J.C. D.W. stated that he had never met M.J.C., and did not provide for her financially. He testified that he appeared by phone at all family group meetings, and cooperated with the ICPC home study. The record is not clear on whether the family group meetings were a part of D.W.'s treatment plan. Neither D.W. nor D.W.'s mother were approved as a placement option by the home study.

¶7 Next, Velin testified that D.W. failed to make even minimal attempts to complete his treatment plan. She stated that D.W. failed to sign any releases, write a detailed personal history including his criminal history, maintain contact with the Department, or establish any sort of relationship with M.J.C. Velin stated she did not believe that D.W.'s conduct or condition was likely to change within a reasonable time, especially in light of two extensions of TLC, and that D.W. had not made any significant progress toward becoming a minimally adequate parent. She concluded that continuing the relationship between D.W. and M.J.C. would likely result in continued abuse or neglect, and termination of D.W.'s parental rights would be in M.J.C.'s best interests.

¶8 Based on the evidence presented, the District Court found that D.W. failed to comply with his treatment plan, that D.W.'s conduct was unlikely to change within a reasonable time, and that a continuation of the parent-child legal relationship between D.W. and M.J.C. would likely result in continued abuse or neglect pursuant to § 41-3-609(1)(f), MCA. The District Court also found that D.W. had abandoned M.J.C. pursuant to § 41-3-609(1)(b), MCA. The court found that the conduct and condition of D.W. renders him unfit, unable, or unwilling to provide M.J.C. with adequate parental care. The District Court also noted that during the two years that M.J.C. had been in foster care, D.W. never met her, and failed to establish a relationship with her. The District Court gave primary consideration to the physical, mental, and emotional conditions and needs of M.J.C., and concluded that her best interests would be served by termination of D.W.'s parental rights pursuant to § 41-3-609(1)(b) and (f), MCA. On appeal, D.W. challenges the District Court's termination of his parental rights.

4

**STANDARDS OF REVIEW**

¶9 We review a district court's decision to terminate parental rights for abuse of discretion. *In re J.C.*, 2008 MT 127, ¶ 33, 343 Mont. 30, 183 P.3d 22. An abuse of discretion occurs when a district court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re T.S.B.*, 2008 MT 23, ¶ 17, 341 Mont. 204, 177 P.3d 429 (citing *In re A.S.*, 2006 MT 281, ¶ 24, 334 Mont. 280, 146 P.3d 778).

¶10 "When making a decision to terminate parental rights, the district court must make specific factual findings in accordance with the requirements of § 41-3-609, MCA, and we review these factual findings under the clearly erroneous standard." *In re J.C.*, ¶ 34 (citing *In re L.H.*, 2007 MT 70, ¶ 13, 336 Mont. 405, 154 P.3d 622). "A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed." *In re J.C.*, ¶ 34 (citation omitted). We review a district court's conclusions of law in terminating parental rights to determine if they are correct. *In re L.H.*, ¶ 13.

**DISCUSSION**

¶11 The criteria for termination of parental rights upon which the District Court based its decision are set forth in two distinct and independent statutory provisions contained within § 41-3-609, MCA. First, the court can order the termination of parental rights upon a finding established by clear and convincing evidence that a child has been abandoned. Section 41-3-609(1)(b), MCA. Abandonment is defined as "leaving a child

5

under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future." Section 41-3-102(1)(a)(i), MCA. Second, the court can order the termination of parental rights if: (1) a child has been adjudicated a youth in need of care; (2) the parent has been noncompliant with an appropriate treatment plan that has been approved by a court; and (3) the conduct or condition rendering the parent unfit is unlikely to change within a reasonable amount of time. Section 41-3-609(1)(f), MCA. Each ground represents a separate and independent basis for termination. *See In re T.H.*, 2005 MT 237, ¶ 32, 328 Mont. 428, 121 P.3d 541. Additionally, § 41-3-604(1), MCA, states that the best interests of the child are presumed to the served by the termination of parental rights when the child has been in foster care for 15 of the most recent 22 months.

¶12 D.W. argues that the District Court's finding that he abandoned M.J.C. was clearly erroneous because it was not supported by substantial evidence. However, the record is clear that the District Court correctly concluded that D.W. never intended to care for M.J.C. D.W. had been involved in these proceedings and represented by counsel since M.J.C. was approximately one month old. Yet, although D.W. has lived out-of-state for M.J.C.'s entire life, he had not attempted or even expressed a plan to visit M.J.C. D.W. has made little to no effort to establish a relationship with M.J.C., and has failed to provide any sort of care, financial or otherwise, to M.J.C. during the two years she was in foster care. D.W.'s noncompliance with his treatment plan also indicates that he had no intention of caring for M.J.C. in the future. Such evidence supports the District Court's finding that D.W. abandoned M.J.C. *See In re adoption of K.P.M.*, 2009 MT 31,

6

¶¶ 25-27, 349 Mont. 170, 201 P.3d 833 (the district court terminated mother's parental rights on the basis of abandonment when she "failed to manifest any intention she would someday resume physical custody or make permanent legal arrangements for [her child]"); *In re T.H.*, ¶¶ 29-33 (the district court terminated mother's parental rights on the basis of abandonment when mother stipulated to TLC, left town, had minimal contact with her children, and no contact with her social worker); *In re M.J.W.*, 1998 MT 142, ¶¶ 16-17, 289 Mont. 232, 961 P.2d 105 (father's failure to parent, with minimal intermittent contact and visitation, made reasonable the belief that father did not intend to resume care of the child in the future). Thus, clear and convincing evidence supports the District Court's finding that D.W. abandoned M.J.C. and did not intend to care for her in the future pursuant to § 41-3-102(1)(a)(i), MCA.

¶13    D.W. also argues that the District Court erred in terminating his parental rights because it lacked substantial evidence for termination under the second statutory ground explained by § 41-3-609(1)(f), MCA. D.W. specifically argues that there was not enough evidence to support the District Court's finding that the conduct or condition rendering D.W. unfit to parent was unlikely to change within a reasonable time. However, D.W.'s argument is unpersuasive, as D.W.'s lack of involvement with M.J.C. is the basis for the limited record. We conclude that many of the same findings supporting abandonment also support a conclusion that D.W. was unlikely to change his conduct toward M.J.C. within a reasonable time. After over two years in foster care and without any relationship with D.W., M.J.C. continued to be a youth in need of care, and dependent, abused, and neglected due to the conduct of Mother *and* D.W. D.W. failed to complete even minimal

7

requirements of the treatment plan and never met M.J.C. The District Court properly gave primary consideration to the emotional and physical needs of M.J.C. and determined that it was not likely D.W.'s conduct toward M.J.C. would change. We conclude that the District Court's determination is supported by clear and convincing evidence.

## CONCLUSION

¶14 For the foregoing reasons, we affirm.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER