FILED

09/27/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0622

DA 21-0622

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 187N

IN THE MATTER OF:

S.M.,

     A Youth in Need of Care.

APPEAL FROM:   District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DN-20-13
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Jennifer Dwyer, Avignone, Banick & Williams, Bozeman, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

     Eileen Joyce, Butte-Silver Bow County Attorney, Mark Vucurovich,
Special Deputy County Attorney, Butte, Montana

Submitted on Briefs:  July 27, 2022

Decided:  September 27, 2022

Filed:

_____
              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Birth Mother appeals the June 22, 2021 Order of the Montana Second Judicial District Court, Butte-Silver Bow County, terminating her parental rights to S.M. We affirm.

¶3 In early September 2009, Birth Mother was arrested for disorderly conduct following a domestic violence dispute. At that time, the Department of Health and Human Services (the Department) placed S.M.'s half sibling, A.H., in foster care. While A.H. was in foster care for two years, Birth Mother did not complete her court ordered treatment plan. On September 15, 2011, the District Court involuntarily terminated Birth Mother's parental rights because she failed to complete her treatment plan.

¶4 On March 2, 2020, the Anaconda Police Department reported that S.M. and Birth Mother had been located after S.M. was listed as a missing person on February 28, 2020. The police arrested Birth Mother for violation of probation. Upon picking up S.M. from the police station, the Child Protection Specialist (CPS) discovered that S.M. had a cough and had not been eating well. S.M. later tested positive for influenza. The Department filed a petition for Emergency Protective Services (EPS), adjudication of S.M. as a Youth

in Need of Care (YINC), and Temporary Legal Custody (TLC) with the District Court on March 12, 2020. The Department alleged physical and emotional neglect of S.M. as well as psychological abuse in the home due to Birth Mother's potential drug use, Birth Mother's residential instability, and Birth Mother's mental health problems. Subsequently, the Department placed S.M. in kinship care with his maternal aunt in Billings.

¶5 The District Court held a show cause hearing on March 12, 2020, and granted EPS the following day. The District Court ordered Birth Mother to appear at the April 8, 2020 show cause hearing. However, Birth Mother's counsel moved to continue the adjudication hearing to allow her more time to consult with her counsel because Birth Mother expressed that she intended to contest the petition regarding adjudication of S.M. as a YINC.

¶6 On April 24, 2020, the Department filed a motion to continue the adjudication hearing regarding Birth Mother because the Department had not yet perfected service on her since her whereabouts were unknown.

¶7 The District Court held a hearing on April 29, 2020, regarding Birth Father, who was not present at the hearing but served by publication. Birth Mother also did not appear because she was in quarantine due to a COVID-19 infection. At the hearing, CPS Outland testified that returning S.M. to the home would place him at "a substantial risk of harm." CPS Outland was asked whether she had any contact with S.M.'s parents regarding visitation. Counsel for Birth Mother objected to the question on the basis that Birth Mother had not been served and asked the District Court not to discuss information concerning her. The District Court sustained the objection and stated that it will "confine this matter to the birth father" and "will proceed to adjudication with regards to birth father at this time."

3

The District Court entered an order adjudicating S.M. a YINC and granting TLC "RE: BIRTH FATHER." In this order, the District Court distinguished that the upcoming disposition hearing would be conducted at the same time as Birth Mother's adjudication hearing.

¶8 Birth Mother was served by publication on May 19, 2020, and the District Court conducted its show cause hearing on June 3, 2020. Birth Mother appeared and stipulated to EPS but moved to continue the YINC adjudication because she hoped to reach a stipulation with the Department and wanted time to address her religious convictions.

¶9 On June 16, 2020, Birth Mother's first counsel filed a motion to withdraw due to "irretrievable breakdown in communications" with Birth Mother. The following day, Birth Mother appeared at the adjudication hearing without representation. At this hearing, the Department mistakenly told the District Court that Birth Mother stipulated to adjudication at the last hearing. The District Court erroneously agreed with the Department. Birth Mother also told the District Court that she did not "understand all the terminology" and that she appeared at the hearing so she could obtain new counsel. On June 22, 2020, notice of substitution of counsel was filed.

¶10 The District Court entered an order on June 29, 2020, continuing EPS, adjudicating S.M. a YINC, and granting TLC "RE: BIRTH MOTHER." The District Court entered this order believing that Birth Mother had stipulated based on the Department's position at the previous hearing. However, nothing in the record indicates that Birth Mother stipulated to adjudication of S.M. as a YINC.

¶11 On July 1, 2020, the District Court conducted a dispositional hearing for both parents. Neither parent was present, but Birth Mother's new counsel appeared. Birth Mother's new counsel moved to continue the hearing to allow her additional time to discuss the case with Birth Mother. The District Court asked the Department whether both parties had been adjudicated. The Department once again responded that both parents had been adjudicated. Birth Mother's new counsel did not object. The District Court granted the continuance.

¶12 At the July 15, 2020 hearing, the District Court acknowledged that it did not have records indicating Birth Mother had her adjudication. Again, the Department responded that the District Court held an adjudication regarding Birth Mother on June 17, 2020. Birth Mother's new attorney stated that she agreed with the Department's position regarding the adjudication. Additionally, CPS Sas testified at this hearing that Birth Mother had not been working on her treatment plan and that he has had difficulty reaching Birth Mother over the phone.

¶13 The District Court conducted a hearing on August 26, 2020, regarding Birth Mother's treatment plan. Birth Mother's counsel informed the District Court that Birth Mother wanted to transfer the case to Billings. After CPS Outland testified about components of the treatment plan, the District Court approved the treatment plan because Birth Mother had failed to maintain consistent contact with the Department.

¶14 The Department petitioned the District Court on November 19, 2020, to extend TLC of S.M. because Birth Mother had not complied with her treatment plan. The District Court held a hearing on December 2, 2020. CPS Dale testified that Birth Mother did not have

stable housing, that she stopped attending mental health care, that she enrolled in random urinalysis testing but had not been tested, and that she involved herself in an abusive relationship. CPS Dale further testified that Birth Mother had contacted CPS by email four to five times and once in person since S.M. had been in foster care. Birth Mother did not appear at this hearing.

¶15 On January 27, 2021, the District Court conducted a hearing regarding Birth Father's parental rights. The guardian ad litem (GAL) submitted a report to the District Court advocating that Birth Mother's parental rights also be terminated and that she supported S.M.'s current kinship foster placement becoming his adoptive family. The GAL stated, in her report, that Birth Mother had only called S.M. once and had never seen him in person for the 11 months he had been in foster care. The District Court terminated Birth Father's parental rights on February 1, 2021.

¶16 The Department filed a petition to terminate Birth Mother's parental rights on March 31, 2021, based on three theories: (1) Birth Mother abandoned S.M., (2) the 2011 prior involuntary termination of Birth Mother's parental rights constituted aggravated circumstances that are relevant to S.M.'s case, and (3) Birth Mother failed to complete her treatment plan.

¶17 Following two continuances requested by Birth Mother, the District Court held a termination hearing for her on June 9, 2021. Birth Mother appeared and testified that she opposed adjudication of S.M. as a YINC and termination of her rights. She stated that she had complied with substance testing with her probation officer, moved into sober living, and had a mental health evaluation. CPS Dale also testified that the facts leading to the

2011 termination of Birth Mother's parental rights to A.H. were consistent with what occurred in S.M.'s case. Birth Mother requested that TLC be extended for another six months so she could complete her treatment plan.

¶18 On June 22, 2021, the District Court entered an order terminating Birth Mother's parental rights and granting permanent legal custody to the Department. Birth Mother appeals the termination of her parental rights, raising three issues. She argues that she was denied due process in the termination proceeding, that the District Court abused its discretion when it concluded that she abandoned S.M., and that the District Court abused its discretion when it found that her prior involuntary termination constituted aggravated circumstances.

¶19 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re D.D.*, 2021 MT 66, ¶ 9, 403 Mont. 376, 482 P.3d 1176. A district court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *In re D.D.*, ¶ 9. We review findings of fact for clear error and conclusions of law for correctness. *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces us that the district court made a mistake. *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405.

¶20 The Department may only terminate an individual's parental rights if certain conditions are satisfied by clear and convincing evidence. Section 41-3-609(1), MCA. Clear and convincing evidence is "simply a requirement that a preponderance of the

evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of the proof." *In re K.L.*, 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691. When reviewing a district court's findings, we do not consider whether the evidence could support a different finding, nor do we substitute its judgment for that of the factfinder regarding the weight given to the evidence. *In re A.K.*, 2015 MT 116, ¶ 31, 379 Mont. 41, 347 P.3d 711.

¶21 First, Birth Mother contends that the District Court denied her due process and fundamentally fair proceedings when it denied her motion to continue the adjudication hearing and when it proceeded with an adjudication hearing "as to" Birth Father only. She contends that this deprived her of due process rights because her presence at the adjudication hearing must serve as a jurisdictional prerequisite to termination of her parental rights. Birth Mother further asserts that the District Court abused its discretion when it proceeded with adjudication in Birth Mother's absence and without proper notice, which as a result, disadvantaged her at the termination proceedings because the Department was able to adjudicate S.M. a YINC in an uncontested hearing.

¶22 A natural parent's right to the care and custody of her children "is a fundamental liberty interest which must be protected by fundamentally fair proceedings." *In re A.H.*, 2015 MT 75, ¶ 1, 378 Mont. 351, 344 P.3d 403. While the right to parent is a fundamental right, this Court has consistently stated that a child's physical, mental, and emotional needs are paramount in any determination and "take precedence over the parental rights." *In re X.M.*, 2018 MT 264, ¶ 21, 393 Mont. 210, 429 P.3d 290; *In re K.J.B.*, 2007 MT 216, ¶ 24, 339 Mont. 28, 168 P.3d 629 (citing § 41-3-609(3), MCA).

¶23 An adjudication that a child is a YINC is a requirement for TLC under § 41-3-442(1), MCA, and for a termination of parental rights under § 41-3-609(1)(f), MCA. *In re J.C.*, 2008 MT 127, ¶ 39, 343 Mont. 30, 183 P.3d 22. By definition, a "youth in need of care [. . . ] is a youth who has been adjudicated or determined, after a hearing, to be or to have been abused or neglected." Section 41-3-102(35), MCA. We have repeatedly referred to the YINC adjudication as a jurisdictional prerequisite, or "threshold requirement," to the termination of parental rights. *In re B.N.Y.*, 2003 MT 241, ¶ 22, 317 Mont. 291, 77 P.3d 189; *In re M.O., M.O. and M.O.*, 2003 MT 4, ¶ 12, 314 Mont. 13, 62 P.3d 265. Moreover, this Court has held that a child is not determined to be a YINC "as to" any parent or anyone. *In re K.B.*, 2016 MT 73, ¶ 19, 383 Mont. 85, 386 P.3d 722. Instead, a child shall be adjudicated as a YINC if he or she is being or has been abused, neglected, or abandoned. *In re K.B.*, ¶ 19.

¶24 The District Court erred when it proceeded with an adjudicatory hearing "as to" Birth Father and when it mistakenly concluded that Birth Mother stipulated to adjudication of S.M. as a YINC. We have established that a child is not adjudicated as to any parent and have advised district courts against following such a practice. Nonetheless, the District Court adjudicated S.M. as to Birth Father and improperly stated in multiple orders that Birth Mother stipulated to adjudication. At the hearing on June 17, 2020, the District Court and the Department mistakenly agreed that Birth Mother had stipulated at the previous hearing. Also, during this hearing, Birth Mother was unable to correct the Department's or District Court's mistakes because she did "not understand all the terminology." The District Court never conducted a second adjudication hearing "as to" Birth Mother, but

9

rather issued an order declaring S.M. a YINC regarding Birth Mother on June 29, 2020. As a result, Birth Mother was prejudiced because the Department adjudicated S.M. a YINC without opposition. Birth Mother was deprived due process because she was entitled to notice and an opportunity to be heard at a YINC adjudication hearing concerning her son.

¶25 Since the District Court never properly adjudicated S.M., it lacked the jurisdictional prerequisite to order TLC, order a treatment plan for Birth Mother, or terminate Birth Mother's parental rights for failing to complete a treatment plan. Accordingly, we hold that the District Court's errors violated Birth Mother's due process rights.

¶26 The Department contends that the District Court's errors were merely procedural and subject to harmless error review because the errors would have no impact on the result of the case. Applying harmless error to dependency proceedings is based on the "well established [principle]. . . that no civil case shall be reversed by reason of error which would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless." *In re B.J.T.H.*, 2015 MT 6, ¶ 21, 378 Mont. 14, 340 P.3d 557 (citations omitted). However, a YINC adjudication following proper notice to Birth Mother is a jurisdictional or threshold requirement for termination of her parental rights pursuant to § 41-3-609 (1)(f), MCA. The error cannot be harmless. Notwithstanding, this error alone does not provide a basis for reversing termination of her parental rights.

¶27 Second, Birth Mother contends that the District Court erred because there was insufficient evidence and findings to terminate her parental rights pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(a)-(e), MCA. She argues the District Court's findings of fact and conclusions of law are silent about her prior involuntary termination, the

10

circumstances related to that prior termination, or the relevance of those circumstances to the current case. Birth Mother argues that the parties did not offer the 2011 order into evidence and the District Court did not take judicial notice of the prior involuntary termination.

¶28 A district court may terminate parental rights based on clear and convincing evidence of aggravated circumstances. Section 41-3-423(2)(a)-(e), MCA. An aggravated circumstance under § 41-3-423(2)(e), MCA, includes prior involuntary termination of a previous child, which relates to the termination of parental rights regarding the parent's ability to adequately care for the child at issue. Parental termination under § 41-3-609(1)(d), MCA, requires a court to take judicial notice of prior terminations and the facts and circumstances surrounding those orders. *In re T.S.B.*, 2008 MT 23, ¶ 35, 341 Mont. 204, 177 P.3d 429; M. R. Evid. 201, 202. Judicial notice of prior terminations is necessary if a district court is to determine whether those terminations are relevant to the parent's ability to care for the child currently at issue. *In re T.S.B.*, ¶ 35. Circumstances surrounding previous involuntary terminations remain relevant unless the circumstances have changed. *In re I.T.*, 2015 MT 43, ¶ 13, 378 Mont. 239, 343 P.3d 1192.

¶29 The District Court's written order on June 22, 2021, omitted any grounds for terminating Birth Mother's parental rights for aggravated circumstances. The order merely stated that clear and convincing evidence established that Birth Mother had parental rights to another child involuntarily terminated in a prior case, which related to Birth Mother's current ability to care for S.M. The order failed to include any references to facts or circumstances from the prior termination to determine if the previous termination relates

11

to S.M.'s case. The record shows that Birth Mother failed to complete her treatment plan in the current case, but there is no evidence of any facts or circumstances that resulted in Birth Mother's failure to complete her treatment plan in 2011. It is not enough that CPS Dale acknowledged that the 2011 termination was from Yellowstone County and that she believed that the termination is consistent with what occurred here. The record also lacks any findings that the District Court took judicial notice of the 2011 involuntary termination. Therefore, the District Court erred when it based Birth Mother's termination on a prior involuntary termination without taking judicial notice of the 2011 order and without making any factual findings that the circumstances from the previous termination are relevant to the parent's ability to adequately care for the child at issue. However, this error alone does not provide a basis for reversing termination of her parental rights.

¶30 Lastly, Birth Mother contends that the District Court abused its discretion when it found and concluded that Birth Mother abandoned S.M. She argues that the evidence presented throughout the case undermined any conclusion that she did not intend to resume care of S.M. in the future. Birth Mother asserts that she tried to arrange visitation with S.M. through the Department and with S.M.'s caretaker and that she had been trying for months to comply with her treatment plan.

¶31 A district court has authority to terminate a parent-child relationship if clear and convincing evidence establishes that the parent has abandoned the child. Sections 41-3--609(1)(b)-423(2)(e), MCA. Under § 41-3-102(a)(i), MCA, a district court may find a child to be abandoned if it concludes that the parent left a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the

12

future. No requisite time frame applies to this definition of abandonment. *In re Matter of A.E.*, 255 Mont. 56, 60, 840 P.2d 572, 575 (1992). Types of circumstances that create the reasonable belief that the parent has failed to manifest intent to resume care of the child include failure to maintain regular contact with the child, making little to no effort to establish a relationship with the child, and failure to provide any sort of financial or other types of care. *In re T.H.*, 2005 MT 237, ¶ 30, 328 Mont. 428, 121 P.3d 541; *In re M.J.C.*, 2014 MT 122, ¶ 7, 375 Mont. 106, 324 P.3d 1198. Moreover, this Court has held that noncompliance with a court-ordered treatment plan can indicate that the parent had no intention of caring for the child in the future. *In re M.J.C.*, ¶ 12.

¶32 Based upon our review of the record, we conclude that the District Court did not abuse its discretion when it found that the Department presented clear and convincing evidence that supported termination of Birth Mother's parental rights based on abandonment. Birth Mother had "very minimal contact" with the Department. CPS workers had difficulty contacting Birth Mother throughout the TLC period. CPS Outland had no success in contacting Birth Mother. CPS Sas informed the District Court that Birth Mother had not had any visitations with S.M. and had limited phone contact with S.M.'s caretaker. CPS Sas reported that he made multiple attempts to contact Birth Mother over the phone, but her phone was either disconnected or she failed to return the calls. Notably, she failed to show up for a scheduled appointment with CPS Dale to visit S.M. for his birthday. As of the hearing on June 9, 2021, Birth Mother had not seen S.M. since March 4, 2020. The GAL noted in her report that Birth Mother had only called S.M. once and had never had a visitation with him in the 11 months that he had been in foster care. Further,

Birth Mother has not complied with any component of her treatment plan, indicating no intent to care for S.M. in the future.

¶33 The record reflects that Birth Mother abandoned S.M. because she left S.M. under circumstances that demonstrate that she did not intend to resume care of S.M. Therefore, we agree that clear and convincing evidence supports the District Court's termination of Birth Mother's parental rights under an abandonment theory pursuant to §§ 41-3-609(1)(d) and 41-3-102(1)(a)(i), MCA.

¶34 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶35 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ BETH BAKER